UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

REYES Y. RIOS,                              No. 2:05-cv-01711-MCE-DAD

      Petitioner,

  v.                                      <u>MEMORANDUM AND ORDER</u>

K. MENDOZA-POWERS, et al.

      Respondent.

----oo0oo----

Reyes Y. Rios ("Petitioner") is a former California state prisoner proceeding *pro se* with a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner was released from prison on April 4, 2007.  Petitioner maintains, however, that Governor Schwarzenegger's reversal of the 2004 decision by the California Board of Prison Terms ("Board") finding Petitioner suitable for parole violated his right to due process. Petitioner contends that because the reversal violated his due process rights, he is entitled to "credit" towards his mandatory parole period because he was excessively incarcerated.  The Sacramento County Superior Court upheld the Governor's reversal.

1

That decision was upheld by the Third Appellate District as well as by the California Supreme Court in 2005.  Both courts summarily denied the petition, and federal habeas proceedings were subsequently commenced.  The assigned Magistrate Judge issued Findings and Recommendations suggesting that this Court grant Petitioner's due process claim, finding that Petitioner's action was not moot.  These recommendations are now before the undersigned for de novo review.

The issues before this Court are: (1) whether Petitioner's due process claim is moot because he has been released from prison; and (2) if it is not moot, whether the excess time served beyond the unconstitutional denial of parole may be credited toward his mandatory period of parole.  Although the Governor and the state courts improperly applied the California "some evidence" standard, this Court cannot provide effective relief, thereby rendering the matter moot.  Consequently, Petitioner's habeas corpus petition is denied.

**FACTUAL BACKGROUND**

On December 30, 1986, Petitioner and his friend, Peter Gallegos, confronted the victim, Dan Lacy, a sailor home on leave from the United States Navy, and Lacy's friend outside of a cocktail lounge.  The victim and his friend were attempting to leave a parking lot in the latter's truck.  After a verbal exchange, Gellagos struck Lacy through the open passenger window. Lacy and his friend attempted to flee in the friend's truck, but hit a car driven by Michael Rosales, Petitioner's friend.

The victim and his friend drove away, but were chased by Rosales and his passenger, Robert Clement, who ultimately caught them. The victim's friend was pulled from the truck and kicked and hit multiple times. He managed to escape and believed that the victim had done the same.

While waiting in the parking lot of the original confrontation for Rosales to return, Petitioner and Gallegos called another friend, Ok Chul Shin. Shin arrived at the parking lot just as Rosales and Clement were driving in. Petitioner, Gallegos, Clement, and Shin decided to pursue the truck. As they arrived at the truck's location, they saw the victim. They chased him into a tunnel, where they beat him to death with a baseball bat. Petitioner surrendered to the police on January 1, 1987, after having been implicated in the crime by anonymous informants. Petitioner was 17 years old at the time of the commitment offense.

On April 21, 1988, Petitioner was convicted of second-degree murder in the Sacramento County Superior Court. On July 18, 1989, he was sentenced to 16 years to life in state prison, including a one-year sentencing enhancement for the use of a deadly weapon. While incarcerated, Petitioner earned his GED and 27 units towards an Associates degree and has participated in self-help and therapy groups.[1]

///

///

///

---

[1] Petitioner had not been cited nor received any disciplinary violations during his incarceration.

1      The Governor cited in his decision to reverse the Board the

2  circumstances of the commitment offense in addition to

3  Petitioner's denial of participation in the murder during his

4  1988 Youth Authority amenability determination.   Taken together,

5  he concluded, the Petitioner continued to pose an unreasonable

6  risk of danger to the public.   In his habeas petition, Petitioner

7  asserts that the Governor's reversal of the decision of the Board

8  granting parole "arbitrarily and capriciously" violated

9  Petitioner's due process rights, contending that there is "no

10  evidence" justifying Petitioner's continued confinement.   (Pet.

11  at 5, 5-A, 5-B, 5-C.)

12

13                    **<u>PROCEDURE</u>**

14

15      On April 21, 1988, Petitioner was convicted of second-degree

16  murder.   He was sentenced to 15 years to life in state prison for

17  that offense, and an additional year enhancement for the use of a

18  deadly weapon.

19      Petitioner became eligible for parole on September 6, 1997.

20  In May of 2004, Petitioner appeared before the Board for his

21  fourth subsequent parole consideration hearing where he was found

22  suitable for parole.   At this point, he had been incarcerated for

23  17 years.   On September 30, 2004, the Governor reversed the

24  Board's grant of parole.

25      Petitioner subsequently challenged the Governor's decision

26  by filing a Petition for a Writ of Habeas Corpus in Sacramento

27  County Superior Court.   The Superior Court issued a reasoned

28  decision on December 15, 2004 denying the petition.

Petitioner filed a petition for a writ of habeas corpus in the Third Appellate District of California on January 3, 2005.  That petition was summarily denied by order dated February 10, 2005.  Petitioner then sought relief from the California Supreme Court, which was summarily denied on August 10, 2005.

On August 24, 2005, Petitioner filed the instant federal petition for writ of habeas corpus and Respondents immediately moved to dismiss the petition for lack of subject matter jurisdiction.[2]  The Magistrate Judge denied Respondents' motion to dismiss and ordered Respondents to file a response to the habeas petition.  Respondents filed an answer on October 5, 2006 and Petitioner filed a traverse on October 25, 2006.  Petitioner was subsequently released from prison on April 4, 2007.  The Magistrate Judge issued his Findings and Recommendations on December 11, 2009.  Respondent filed objections on January 25, 2010.

## DISCUSSION

**A.   Mootness**

   **1.   Standard**

Article III permits a federal court to exercise jurisdiction only in the existence of a case or controversy.  Spencer v. Kemna, 523 U.S. 1, 7 (1998).

---

[2] Petitioner also filed a habeas corpus petition challenging the Board's 2005 decision finding him unsuitable for parole. This Court adopted the Findings and Recommendations of the Magistrate Judge assigned to the case and denied the petition on the merits.  Rios v. Mendoza-Powers, No. 2:06-cv-01047-MCE-GGH.

The "case or controversy" requirement "subsists through all
stages of federal judicial proceedings, trial and appellate."
Lewis v. Continental Bank, 494 U.S. 472, 477 (1990).  The
mootness doctrine "defines constitutionally minimal conditions
for the invocation of federal judicial power, its meaning and
scope...must be derived from the fundamental policies informing
the 'cases or controversies' limitation imposed by Article III."
Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 754 (1976).
Mootness is jurisdictional,  U.S. v. Brandau, 578 F.3d 1064 (9th
Cir. 2009), and it requires that a petitioner continue to have a
"personal stake in the outcome of the lawsuit."  U.S. v. Verdin,
243 F.3d 1174, 1177 (9th Cir. 2001).  This imposes the
Constitutional requirement that, "throughout the litigation, the
petitioner must have suffered, or be threatened with, an actual
injury traceable to the [respondent] and likely to be redressed
by a favorable judicial decision."  Spencer, 523 U.S. at 7
(quoting Lewis, 494 U.S. at 477).  Generally, "a case becomes
moot when the issues presented are no longer 'live' or the
parties lack a legally cognizable interest in the outcome."  Toyo
Tire Holdings of Americas Inc. v Continental Tire North America,
Inc., 609 F.3d 975 (9th Cir. 2010) (quoting Murphy v Hunt, 455
U.S. 478, 481 (1982)).  Therefore, whether a live case or
controversy actually exists turns on whether a federal court can
grant effective relief "in the event that [it] decides the matter
on the merits."  NASD Dispute Resolution, Inc. v. Judicial
Council of Cal., 488 F.3d 1065, 1068 (9th Cir. 2007).  A party
alleging mootness bears "a heavy burden in seeking dismissal."
///

Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency, 581 F.3d 1169 (9th Cir. 2009).  The "capable of repetition, yet evading review" exception to the mootness doctrine applies in limited circumstances where: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  Spencer, 523 U.S. at 17.  To invoke the exception in habeas corpus petitions, a petitioner must demonstrate "either that the time between parole revocation and expiration of sentence was always so short as to evade review, or that there was reasonable likelihood that he would once again be paroled and have his parole revoked."  Id. at 18.

        The length of time that an offender may spend on parole or be incarcerated for a parole violation is measured by statutory provision, which applies to both determinate and indeterminate sentences.  People v. Jefferson, 21 Cal. 4th 86, 96 (Cal. 1999).  Under the California Penal Code, an inmate is presented with two options for serving his sentence: (1) serve his full sentence in physical custody, or (2) elect to complete his sentence through parole, meaning out of physical custody but subject to certain conditions.  See Cal. Penal Code Ann. § 3060.5 (West 2000).  Should an inmate pursue the latter course, he "remains in the legal custody of the California Department of Corrections throughout the remainder of his term, [citation], and must comply with all of the terms and conditions of parole, including mandatory drug tests, restrictions on association with felons or gang members, and mandatory meetings with parole officers."

7

1   <u>Samson v. California</u>, 547 U.S. 843, 851 (2006).  A habeas

2   petition that challenges "the underlying conviction is never moot

3   simply because, subsequent to its filing, the petitioner has been

4   released from custody." <u>Chacon v. Wood</u>, 36 F.3d 1459, 1463 (9th

5   Cir. 1994), <u>superceded on other grounds</u> by 28 U.S.C. § 2253(c).

6   However, a collateral consequence of the conviction <u>must</u> exist

7   for the suit to be maintained.  <u>Wilson v. Terhune</u>, 319 F.3d 477,

8   489. (9th Cir. 2003).  In cases where the petitioner challenges

9   the criminal conviction itself, "the existence of collateral

10  consequences sufficient to satisfy the case-or-controversy

11  requirement is presumed." <u>U.S. v. Verdin</u>, 243 F.3d 1174, 1177

12  (9th Cir. 2001).  As clarified by the <u>Spencer</u> Court, the

13  restrictions imposed by the terms of parole are such a collateral

14  consequence to satisfy the Article III case-or-controversy

15  requirements.  <u>Spencer</u>, 523 U.S. at 7; <u>see</u> <u>also</u> <u>Thomas v. Yates</u>,

16  637 F. Supp. 2d 837, 841 (E.D. Cal. 2009).

17       Federal courts are vested with "the largest power to control

18  and direct the form of judgment to be entered in cases brought up

19  before it on habeas corpus." <u>Burnett v. Lampert</u>, 432 F.3d 996

20  (9th Cir. 2005).  Therefore, a court is free to "fashion the

21  remedy as law and justice require," and can do more than simply

22  ordering a petitioner's release from physical custody.  <u>Id.</u>

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

8

1

## 2.   **Analysis**

2

3       Having established that the conditions of parole are a
4   concrete injury satisfying the Article III case-or-controversy
5   requirements, the question before the Court with respect to
6   mootness is, as noted by the Magistrate Judge, whether there is
7   any relief this Court could grant to Petitioner in the event he
8   prevails on his habeas petition.   The Magistrate Judge concluded
9   that relief is not foreclosed to Petitioner in the event he
10  prevails on his habeas petition, and that the action therefore is
11  not moot.   Findings and Recommendations, 15:11-13.   Further, the
12  Magistrate Judge found that "any excess time Petitioner spent in
13  prison in violation of his right to due process could be credited
14  against the five-year parole discharge eligibility requirement in
15  order to mitigate any constitutional injury against Petitioner."
16  Id., 13-15.

17      Having commenced his incarceration in 1987, all parties
18  agree that Petitioner is subject to parole as set forth in
19  California Penal Code § 3000.1,[3] which states:

20  ///

21  ///

22  ///

23  ///

24  ///

25

26      [3] Prior to the enactment of Cal. Pen. Code § 3000.1, the
    maximum parole period for second-degree murder was five years.
27  § 3000.1 governs the terms and conditions of Petitioner's parole
    because the commitment offense occurred after January 1, 1983,
28  the enforcement date of the section.

1    (a) In the case of any inmate sentenced under
     [California Penal Code] § 1168 for any offense of first
2    or second degree murder with a maximum term of life
     imprisonment, the period of parole, if parole is
3    granted, shall be the remainder of the inmate's life.

4    (b) Notwithstanding any other provision of law, when
     any person referred to in subdivision (a) has been
5    released on parole from the state prison, and has been
     on parole continuously for...five years in the case of
6    any person imprisoned for second degree murder, since
     release from confinement, the board shall, within 30
7    days, discharge that person from parole, unless the
     board, for good cause, determines that the person will
8    be retained on parole.  The board shall make a written
     record of its determination and transmit a copy of it
9    to the parolee.

10   Respondent argues that, because Petitioner has been released

11   from prison, he is no longer suffering an "actual injury" that

12   can be "redressed by a favorable judicial decision."  (Resp't's

13   Objections to Findings and Recommendations, 3:5-8); see also

14   (Resp't's B. at 1,3.)

15       The Magistrate Judge concluded that California state court

16   decisions denying relief in such circumstances as the instant

17   case do not "preclude this court from rectifying a federal due

18   process violation in the context of a federal proceeding," and

19   that this Court may "fashion a remedy for a federal constitution

20   violation as law and justice require."  Findings and

21   Recommendations, 12:22-25.

22       In re Chaudhary, 172 Cal. App. 4th 32 (2009), serves as the

23   basis of interpretation of § 3000.1 in both state and federal

24   courts.  The state appellate court in Chaudhary concluded that

25   "the five-year parole discharge eligibility requirement cannot be

26   satisfied in whole or in part by time spent in prison prior to

27   release from confinement to parole."  172 Cal. App. 4th at 37.

28   ///

                                10

A statutory analysis, asserted the court, leads to one clear conclusion: the "five-year discharge eligibility requirement is expressly limited to the period of time <u>after</u> the parolee '<u>has been released</u>' and requires that the parolee serve five continuous years on parole '<u>since the parolee's release from confinement</u>.'"   <u>Id.</u> (quoting Cal. Pen. Code 3000.1) (emphasis in original).   Therefore, a parolee must first have been "'released on parole' and must then complete five continuous years on parole after the parolee's 'release from confinement.'"   <u>Id.</u> (emphasis in original).   Additionally, the court distinguished indeterminate sentences (those without a fixed end-date) from determinate sentences (those with a fixed end-date) and concluded that there "is no way to apply 'credits' to a lifetime parole period."   <u>Id.</u> at 38.   The Magistrate Judge found this to be a "distinction without a difference."   Findings and Recommendations, 14:25.

This distinction, however, has been continuously recognized by the Eastern District, as well as other federal courts in California.   Recently, in <u>Thomas</u>, the Court found that a remedy was available and that excess time could be credited towards petitioner's determinate parole period <u>because</u> the petitioner was not subject to the lifetime parole requirement set forth in § 3000.1. 637 F. Supp. 2d at 841; <u>see also</u> <u>Cowans v. Hartley</u>, 2010 WL 582104 at *4 (E.D. Cal. February 11, 2010) (holding that, because petitioner's commitment offense took place before the enactment of § 3000.1, he was not subject to the lifetime parole provision and the court could therefore provide an effective remedy).

The overwhelming trend is to deny a pending habeas petition as moot if the petitioner is released from prison and § 3000.1 applies.  In fact, it appears as though only one decision deviates from this overwhelming trend, and does not apply § 3000.1 in the manner suggested by the <u>Chaudhary</u> court: <u>Thompson v. Carey</u>, 2009 WL 1212202 (E.D. Cal. May 05, 2009) (concluding that it would leave lifetime parolees without any effective remedy for their unconstitutional confinement).

The record establishes that Petitioner was not released from physical confinement until April 4, 2007.  According to § 3000.1, the five-year parole discharge eligibility requirement would not commence until that date.  As noted by the <u>Chaudhary</u> court:

> "[t]here is no way to apply credits to a lifetime parole period.  Even if we were to assume that a parolee would be entitled to a credit against his or her parole period for time spent unlawfully incarcerated, that would not establish that section 3000.1's parole discharge eligibility requirement could be satisfied with such credits."

172 Cal. App. 4th at 38.  Petitioner is a lifetime parolee, which is the critical distinction in this case.  Petitioner, who is subject to an indeterminate parole period, may only be eligible for release from parole after the mandatory five-year period.  This period, as is clearly defined by statute and identified by state and federal courts, may only commence <u>after</u> the Petitioner has been released from prison.

Therefore, to adopt the same practice as in determinate cases--apply credits to an indeterminate parole term--would violate the text of the underlying statute - California Penal Code § 3000.1.

///

12

This Court cannot grant effective relief without acting against clearly established statutory law, rendering the petition moot. The Magistrate Judge's Findings and Recommendations with respect to the mootness issue are accordingly rejected.

**B.    Habeas Corpus Petition**

**1.    Standard**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), applies to all petitions for a writ of habeas corpus filed after the statutes enactment on April 24, 1996.  The instant petition was filed in 2004, after the effective date of the AEDPA, and is therefore analyzed under the provisions of the AEDPA.  As a consequence, the petition may only be granted if Petitioner "demonstrates that the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010). Petitioner bears the burden of establishing that the state court's decision is "contrary to" or was an "unreasonable application" of federal law.  Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).

In determining what is clearly established Federal law, courts must look to the Supreme Court decision holdings, as opposed to dicta, at the time of the relevant state court decisions.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).
///

Courts must then decide whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 72. Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).

Under the "unreasonable application" clause, the federal habeas court may grant the writ if the state court identifies the correct governing legal doctrine from the Supreme Court's decisions but applies that principle unreasonably to the facts of the prisoner's case." Williams, 529 U.S. at 413. The state court's application of clearly established Federal law must be erroneous or incorrect in addition to being unreasonable. Id. at 411. In conducting such an analysis, the court must evaluate whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Although, as dictated by 12 U.S.C. § 2254(d)(1), only Supreme Court law is binding on the states, federal appellate court precedent is relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Kessee v. Mendoza-Powers, 574 F.3d 675, 678 (9th Cir. 2009) (internal citations omitted).

///

///

///

14

A due process claim requires two analytical steps: (1) whether a protected liberty interest exists; and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient.  Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).  A parole date is not a protected liberty interest defined by the federal Constitution itself.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However, the Ninth Circuit Court of Appeals has asserted that "state-created rights may give rise to liberty interests that may be enforced as a matter of federal law."  Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209 (2005)); see also Cooke v. Solis, 606 F.3d 1206 (9th Cir. 2010).  The Ninth Circuit further held in an *en banc* decision that if there is a "right to release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release."  Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2008).  The Court concluded that California's parole scheme gives rise to such a right, and that a prisoner is entitled to release in the absence of "some evidence" of current dangerousness.  See Pearson, 606 F.3d at 611.

Having established that such a liberty interest exists in the California parole scheme, a federal habeas petition brought by a California prisoner is reviewed on two grounds:

///

///

///

///

1  (1) whether the California judicial decision approving the

2  governor's or parole board's decision rejecting parole was an

3  unreasonable application of the California "some evidence"

4  requirements; or (2) whether the decision was based on an

5  unreasonable determination of the facts in light of the evidence.

6  See Hayward, 603 F.3d at 563.[4]

7

8      **2.  Analysis**

9

10     As a threshold matter, the California District Court of

11 Appeal and Supreme Court did not reach the merits of Petitioner's

12 claims.  Consequently, with regards to the 2004 reversal, this

13 Court reviews the decision of the Sacramento County Superior

14 Court because it is the only state judicial order setting forth

15 reasons for denying habeas corpus relief to Petitioner. Robinson

16 v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004); see also Ylst v.

17 Nunnemaker, 501 U.S. 797, 802 (1991) (holding that where there

18 has been one reasoned state judgment rejecting a federal claim,

19 later unexplained orders upholding that judgment or rejecting the

20 same claim rest upon the same ground).

21 ///

22

23        [4] The "some evidence" standard is extremely deferential and
   any conflict of evidence, or weight given to the evidence, is
24 within the authority of the Board or Governor and requires only a
   "modicum of evidence" of unsuitability for parole.  In re Lazor,
25 172 Cal. App. 4th 1185, 1198 (2009) (quoting Lawrence, 44 Cal.
   4th at 1191, n. 2).  A federal habeas court may not substitute
26 its own judgment for the Board's merely because it would weigh
   the evidence differently.  Id. at 1199 (quoting Rosenkrantz, 29
27 Cal. 4th at 677).  Therefore, this Court must determine whether
   the evidence cited by the Governor and the Sacramento Supreior
28 Court conforms with the "some evidence" requirements that
   Petitioner is a current threat to public safety.

1    The California Supreme Court has held that "some evidence"

2 is required by the state regulatory, statutory, and

3 constitutional provisions that govern parole decisions in

4 California.  Cooke, 606 F.3d at 1214 (citing In re Rosenkrantz,

5 29 Cal. 4th 616 (2002).  Under California law, "the paramount

6 consideration for both the Board and the Governor" must be

7 "whether the inmate currently poses a threat to public safety and

8 thus may not be released on parole", and "the facts relied upon

9 by the Board or the Governor [must] support the ultimate decision

10 that the inmate remains a threat to public safety" in light of

11 the full record available to the Board or Governor.  Id. (quoting

12 In re Lawrence, 44 Cal. 4th 1182 (2008)).  A reviewing court must

13 inquire "whether some evidence supports the decision of the Board

14 or the Governor that the inmate constitutes a current threat to

15 public safety."  See Hayward, 603 F.3d at 562.

16    In its order approving the 2004 reversal, the Sacramento

17 Superior Court reiterated the concerns expressed by the Governor.

18 (Answer, Ex. 3.)  Although the Governor's decision, and the

19 reasoned Superior Court decision affirming that action, describe

20 in detail the circumstances of the commitment offense, both are

21 markedly devoid of any evidence pointing to Petitioner's "current

22 dangerousness."  The Superior Court concluded that the Governor's

23 reliance on the circumstances of the commitment offense meet the

24 "some evidence" standard.  (Id.)

25 ///

26 ///

27 ///

28 ///

17

1 In Lawrence, supra, the California Supreme Court held that the

2 Governor may consider the circumstances of the commitment offense

3 when making a parole decision, but the nature of the crime does

4 not by itself provide for some evidence of an individual's

5 current dangerousness to the public.  44 Cal. 4th at 1212.  An

6 aggravated offense does not, in every case, establish that the

7 inmate is a current threat to public safety.  Hayward, 603 F.3d

8 at 562.  The record must also establish that the prisoner's pre-

9 or post-incarceration history or his current demeanor and mental

10 state indicate that the "implications regarding the prisoner's

11 dangerousness that derive from his or her commission of the

12 commitment offense remain probative to the statutory

13 determination of a continuing threat to public safety."  Cooke,

14 606 F.3d at 1214.

15     The Ninth Circuit has looked to the California parole

16 regulations which identify circumstances that indicate

17 unsuitability for release: aggravated nature of the commitment

18 offense; an unstable social history; a history of severe mental

19 problems related to the offense; and serious misconduct in jail.

20 Pirtle v. California Board of Prison Terms, 2010 WL 2732888 (9th

21 Cir. July 12, 2010) (citing Cal. Code Regs., tit. 15, § 2402(c)).

22 Circumstances showing suitability for parole include the lack of

23 a juvenile record; a stable social history; signs of remorse;

24 significant stress as a motivation for the crime; lack of a

25 criminal history; realistic plans for the future; and good

26 institutional behavior.  Id. (citing Cal. Code Regs., tit. 15

27 § 2402(d)).

28 ///

1    When applying this standard to the record before the Court,
2  neither the Governor's decision reversing parole nor the Superior
3  Court's decision denying the petition is supported by "some
4  evidence" as it has been defined by the California Supreme Court
5  and interpreted by the Ninth Circuit.  The Governor stated that
6  Petitioner "demonstrated [a] chilling and exceptionally callous
7  disregard for human suffering" by participating in the attack.
8  (Answer, Ex. 2.)  In affirming the Governor's decision, the
9  Superior Court noted the "egregious" nature of the crime.
10 (Answer, Ex. 3.)  The circumstances of the offense alone are
11 insufficient to establish that the inmate is a danger to the
12 community under the "some evidence" standard.  See, e.g.,
13 Lawrence, 22 Cal. 4th at 1213.  The Board has not cited any
14 evidence of Petitioner's pre- or post-offense activity that
15 suggests he is currently a danger to the community.  The bare
16 assertion that Petitioner continues to be a danger to the
17 community does not meet California's "some evidence" standard.

18    Petitioner had no disciplinary write-ups; had participated
19 in rehabilitative and educational programs including Breaking
20 Barriers, AA, Life Skills Management, Pre-Release Education
21 Program, 21 hour Basic Alternatives to Violence Project; a Walk-
22 a-Thon for Abused Children, a 14 hour intensive journalism
23 workshop, and Anger Management.  (Lodgmentm Section 3, 71-73.)
24 He also earned his GED and 27 units towards an A.A. degree from
25 Solano Community College.  (Id.)
26 ///
27 ///
28 ///

19

Additionally, and directly on point, psychological evaluators in a report dated October 30, 2001, commented that Petitioner was assessed as posing an "extremely low" risk of dangerousness, with an "extremely small" violence potential in a structured or unstructured environment." (Id. at 74.)  The report indicated that Petitioner had a strong, secure, and stable childhood environment, excellent academic performance, and an excellent mental health history with regards to relationships. (Id. at 74-75.)  Moreover, Petitioner was also credited with having "an admirable ability to negotiate hostile and aggressive circumstances" in a manner resulting in "peaceful negoation[s] and positive outcome[s]." (Id. at 77.)  The report concluded that "there are no psychological factors that would interfere with a successful parole...[and] several factors suggesting that the inmate is an excellent candidate for a successful parole." (Id. at 79.)  This record was sufficient to conclude, as the Board did, that Petitioner "would not pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Id. at 71.)

The Governor's decision, and the Sacramento Superior Court's subsequent approval, do not engage in an evaluation of the evidence or a weighing of the factors in order to determine their probative value in assessing Petitioner's current dangerousness. The Board, Governor, or court must reference factors in addition to the circumstances of the commitment offense when denying parole. Cooke, 606 F.3d at 1214.

///

///

20

In the instant case, neither the Governor nor the Superior Court
included evidence showing that the original commitment offense
remains probative of Petitioner's "current dangerousness" in
light of other pre- or post- offense factors.

Therefore, not only do the Governor's decision and the
subsequent approval by the state courts run afoul of the "some
evidence" standard, they are also an unreasonable determination
of the facts in light of the evidence.

## **CONCLUSION**

Based upon a review of the full record, the Governor and the
state courts decisions improperly applied the "some evidence"
standard and were an unreasonable determination of the facts.
The Magistrate Judge's Findings and Recommendations suggesting
that the reversal of parole was unfounded are adopted.  As
discussed above, however, because Petitioner is a life parolee,
this Court is without the power to provide effective relief due
to the unambiguous statutory language of California Penal Code
§ 3000.1.  Therefore, the Findings and Recommendations as to the
issue of mootness are rejected.

Accordingly, Petitioner's Petition for Writ of Habeas Corpus
(Docket No. 1) is DENIED.

Dated: August 27, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

21